CHARLES H. CURTISS ET AL. APPEAL FROM PROBATE.

First Judicial District, Hartford, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

General Statutes, § 398, concerning the distribution of ancestral real
    estate, provides that under certain conditions it shall go equally to
    the children of the ancestor and "those who legally represent
    them." *Held* that the words quoted, which were equivalent to
    "legal representatives," were used to describe those who inher-
    ited, *per stirpes*, the property of a deceased ancestor, and in whose
    place they stood for the purposes of succession to such property;
    and that as thus used they meant lineal descendants only, and did
    not include parents.
In the present case a father died intestate leaving one child, a son, and
    a widow. Shortly thereafter the son, and a few days later the
    widow, died, each intestate. *Held* that ancestral real estate in-
    herited by the son from his father went to the father's next of kin,
    the widow not being entitled to take as the "legal representative"
    of her son.

Argued October 5th—decided November 11th, 1904.

APPEAL from a judgment of the Superior Court in
Litchfield County, *Case, J.*, affirming an order of the Court
of Probate for the district of Woodbury which required cer-
tain land of an intestate to be distributed as ancestral es-
tate. *No error.*

*John O'Neill*, with whom was *William Kennedy*, for Charles
H. Curtiss *et al.* (appellants).

*James Huntington*, for Emery Tuttle *et al.* (appellees).

TORRANCE, C. J. This controversy relates to the de-
scent of certain land in this State, and the controlling facts
in the case are in substance these : Burritt Tuttle and his
wife Julia intermarried before April 20th, 1877, and the
sole issue of the marriage was a son, Walter C. Tuttle. In
1878 Julia owned the land in question in fee, and in De-
cember of that year her husband joined with her in a deed

conveying said land in fee to Albert Tuttle. Subsequently, in April, 1880, Albert Tuttle conveyed said land in fee by deed to Burritt Tuttle. Both deeds, after they were delivered, were kept together in the house occupied by Burritt Tuttle and his wife, and neither deed was recorded until after the death of Julia. The legal title to said land was in Burritt Tuttle at the time of his death. He died March 24th, 1900; Walter, the son, died March 30th, 1900, and Julia, his mother, died April 3d, 1900. Each died intestate. Walter left neither widow, nor lineal descendants, nor brothers nor sisters, nor any representatives of them. The appellants are Walter's nearest of kin on his mother's side; and the appellees are his nearest of kin on his father's side.

Burritt Tuttle's estate was fully settled in the Court of Probate, and the land in question, as part of that estate, was in September, 1901, distributed to the estate of Walter C. Tuttle, and no appeal has been taken from the order accepting such distribution. Subsequently, in the settlement of Walter's estate, the land in question was by order of the Court of Probate distributed, as ancestral estate coming to him from his father, to the appellees. It is of this distribution that the appellants complain.

In the Superior Court they apparently made two claims: one was, in effect, that Julia never parted with her original title but continued to own the land in question till her death; and the other was, in effect, that if the title to the land descended from Burritt to Walter, as claimed by the appellees, then, under our statutes of distribution, it passed at Walter's death to his mother as his sole heir and legal representative. The court, in effect, overruled both claims.

Upon the facts found we think the first claim was properly overruled. By the deeds set forth in the record, and the facts found with regard to them, Burritt Tuttle must be regarded as having died seized and possessed in fee of the land in question.

The only question really in the case in this court, and the only one argued before us, relates to the second claim. The land in question, as part of the estate of Walter C. Tuttle,

was ancestral estate, and the ancestor from whom it came to him, within the meaning of our statute of distribution, was his father. *Buckingham* v. *Jacques*, 37 Conn. 402; *Clark* v. *Shailer*, 46 id. 119. The statute under which the distribution complained of was made was § 632 of the Revision of 1888, which now appears unchanged as § 398 of the Revision of 1902. That statute provided, in substance, that the ancestral real estate of an intestate should be distributed as follows : (1) to his brothers and sisters, and those who legally represent them, of the blood of the ancestor from whom such estate came ; (2) if there are none such, then to the children of the ancestor, and those who legally represent them ; (3) if there be none such, then to the brothers and sisters of the ancestor and those who legally represent them ; and if there be none such, then (4) " it shall be divided in the same manner as other real estate." As Walter left no brothers nor sisters, nor legal representatives of them, the land, on his death, would pass to the other children of the ancestor, and to " those who legally represent them," if any. At Walter's death there were no such children, and there existed none who legally represented them, within the meaning of the statute, unless the mother of Walter comes within that class. The precise claim of the appellants is that the mother was the legal representative of Walter within the meaning of the statute.

This claim is not tenable. In the statute under consideration the words " legal representatives," or their equivalent, are used to describe those who inherit property *per stirpes*, as the representatives of a deceased ancestor, in whose place, for the purposes of succession to such property, they stand. As thus used we think the words in question mean " lineal descendants " only, and do not include parents. We are not aware that such a construction has been expressly put upon those words by this court before ; but we think this has been the construction uniformly put upon them by the courts of this State in dealing with this statute ; and we are not aware of any decision of this court to the contrary. This is the meaning given to them by Judge Swift, in his Digest,

in dealing with the rules of descent and distribution in this State. Thus he says : " The rule is that the lineal descendants of any person deceased, shall represent their ancestor *in infinitum,* and stand in the same place as he would have done had he been living." 1 Swift's Dig. 115. He also says : " When we speak of the representatives of brothers, and sisters, it must be understood in the same sense as when we speak of the representatives of children, or lineal descendants ; " 1 Swift's Dig. 116 ; and he frequently uses the words " lineal heirs " as the equivalent of the words " legal representatives." 1 Swift's Dig. pp. 115–117. This was also the meaning imputed to the words in question by JUDGE FENN in *Ketchum* v. *Corse,* 65 Conn. 85, 89 ; and so far as we are aware it is the meaning that has been uniformly given to them. In *Buckingham* v. *Jacques,* 37 Conn. 402, it appeared that the intestate inherited certain land from his mother. He was an only child, and he left no lineal descendants, nor brothers nor sisters, nor legal representatives of them, nor were there any children, nor brothers nor sisters, of the ancestor, nor legal representatives of them. It was held that the land was to be distributed in the same manner as real estate not ancestral ; thus in effect holding that the father was not the " legal representative " of the son upon a state of facts very similar to those in the case at bar.

Upon the facts found we think the land passed to the brothers and sisters of the ancestor, Burritt Tuttle, and those who legally represent them.

There is no error.

In this opinion the other judges concurred.